UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBEN BONYADIAN,

Petitioner,

v.

TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, *et al*.,

Respondents.

Case No.  1:26-cv-03504   (AMO)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

This habeas action concerns the detention of petitioner Roben Bonyadian ("Petitioner"), a noncitizen who was ordered removed to Iran in 2001, but was released on an order of supervision after immigration authorities were unable to remove him. Petitioner has been living at liberty since then, during which time he has developed roots in Los Angeles County, started a successful business that employs several individuals, and has purchased land in California that he plans to develop.

On December 18, 2025, Immigration and Customs Enforcement ("ICE") revoked his release, placed him under arrest, and transferred him to the California City Immigration Processing Center, where he remains detained. This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus ("Petition"). For the reasons explained below, the Petition is GRANTED.

I.      **BACKGROUND**

Petitioner is a citizen of Iran who entered the United States in 1999 to escape religious persecution. *See* Dkt. 1 ("Pet.") ¶ 16. He asserts that he was convicted in Iran for converting to Christianity and was sentenced to death. *Id*. Petitioner fled to the United States and crossed the

southern border on October 15, 1998 without inspection. *Id*. ¶ 14. On April 2, 1999, Petitioner was served with a Notice to Appear, placing him in removal proceedings. *Id*. ¶15. Petitioner subsequently filed for asylum, which was denied by an Immigration Judge ("IJ") on January 4, 2001. *Id*. ¶¶ 16–17. He was ordered removed that same day.

Following the IJ's determination, DHS detained Petitioner in 2011 with the intent to remove him to Iran. *Id*. ¶ 19. After the three-month removal period elapsed, DHS was unable to obtain travel documents to effectuate the removal and released Petitioner on an order of supervision. *Id*. ¶ 20. Petitioner has since lived in the United States continuously for the last fifteen years, and Respondents do not dispute Petitioner's assertions that he has fully complied with his order of supervision since his release. *Id*. ¶ 21.

On December 18, 2025, Petitioner reported for a regularly scheduled order of supervision check-in and was arrested by ICE. *Id*. ¶ 24. Petitioner's "Notice of Revocation of Release"—dated the same day as his arrest—states that his order of supervision was revoked because, "ICE has determined that [he] can be removed from the United States pursuant to the outstanding order of removal against [him,]" "the purpose of [his] release has been served and it is appropriate to enforce the removal order." Dkt. 8 ("Opp."), Ex. 6. Petitioner is now detained at California City Correctional Facility. Pet. ¶ 27.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*

United States District Court
Eastern District of California

*Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Although Petitioner asserts three claims for relief, his arguments can be distilled to one main point: he argues that specific regulations required that ICE show a significant likelihood that they could remove him to Iran in the reasonably foreseeable future before revoking his order of supervision, and they failed to do so. Because Respondents failed to show that ICE will be able to remove Petitioner to Iran in the reasonably foreseeable future, the Court finds that Petitioner's revocation of release and subsequent detention was unlawful.

Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), however, Respondents appear to assume that Petitioner has the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. Opp. at 4. This, however, is the wrong burden shifting framework under ICE regulations. *Zadvydas* dealt with a noncitizen who had been detained and *never released* following a final order of removal. *Zadvydas*, 533 U.S. at 701. In that context, the Supreme Court held that once an alien has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

However, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025). Rather, "[t]his case is about ICE's authority to *re-detain* [Petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." *Id.* The regulations that govern the revocation of release for non-citizens like Petitioner—i.e., individuals that ICE was unable to remove and released on an order of supervisions—are 8 C.F.R. §§ 241.13 and 241.4. Section 241.13, which is cited as the basis for ICE's authority in Petitioner's Notice of Revocation of Release, is entitled "Revocation for removal[,]" and provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(h)(i)(2) (emphasis added). As such, "it is [ICE's] burden to show a significant likelihood

that the alien may be removed." *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Yan-Ling X. v. Lyons*, No. 1:25-CV-01412-KES-CDB (HC), 2026 WL 494468, at *2 (E.D. Cal. Feb. 23, 2026); *Oliva Funez v. Chestnut*, No. 1:26-CV-01845-KES-CDB (HC), 2026 WL 972548, at *3 (E.D. Cal. Apr. 10, 2026).

Further, Respondents have failed to show any changed circumstances indicating that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. The only changed circumstance that Respondents identify is that a travel document request packet was submitted on January 7, 2026, and that ICE has successfully obtained travel documents for a different individual in April 2026. Opp. at 2–3. As an initial matter, this travel document request was made several weeks after Petitioner's arrest and detention, suggesting that ICE did not have any reason to believe Petitioner could be removed in the foreseeable future at that time. This aside, Respondents fail to explain why Iran did not issue a travel document when ICE attempted to remove Petitioner in 2011 or why Iran is likely to issue a travel document for Petitioner in the reasonably foreseeable future now. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Respondents do not explain what considerations the Iranian government might take into account when deciding whether to issue a travel document to Petitioner, and do not explain whether the Iranian government will look favorably upon Petitioner's case. *See Liu v. Carter*, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence demonstrating that seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely). Evidence that "there is at least some possibility that" the designated country of removal "will accept Petitioner at some point … is not the same as a

4

significant likelihood that he will be accepted in the reasonably foreseeable future." *Nguyen v. Scott*, No. 2:25-CV-01398, 796 F.Supp.3d 703, 725 (W.D. Wash. Aug. 21, 2025).

The record of this case provides reason to doubt that Iran will issue a travel document for Petitioner in the reasonably foreseeable future. Petitioner was not removed in 2001 when he was ordered removed by an IJ, or in 2011 when DHS attempted to execute his removal.  Respondents have since been unable to remove Petitioner for the last fifteen years. "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." *Chun Yat Ma v. Asher*, No. 11-cv-01797-MJP, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

As such, Respondents failed to show that there is a significant likelihood of removal in the reasonably foreseeable future (or if there was a violation of the order of supervision, which respondents do not allege here). *See* 8 C.F.R. § 241.13(h)(i). "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954). Numerous district courts, including courts in the Ninth Circuit, "have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting a habeas petition and ordering the petitioner's release where the Government failed to comply with § 241.13); *see Hoac*, 2025 WL 1993771, at *4 (finding petitioner was likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); *Rombot*, 296 F. Supp. 3d at 387–88 (holding that ICE's failures to follow the revocation procedures in § 241.4 rendered the petitioner's detention unlawful). Similarly, courts have found that ICE's failure to follow its own regulations—particularly where they are designed to provide due process protections—violates due process. *See Diaz v. Wofford*, No. 1:25-CV-01079 JLT

United States District Court
Eastern District of California

EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L. v. Bostock*, No. 6:26-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) ("More fundamentally, ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of Petitioner's due process rights …".); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) ("[T]here is absolutely no record of the decision to revoke [the petitioner's] release ... which reveals an even more significant due process problem …".); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025) ("Although [the petitioner's release] was subject to § 241.4(l) and not § 241.13(i), the Court nevertheless finds that ICE failed to provide [him] with a meaningful opportunity to contest the revocation of his [order of supervision] through an informal interview [in violation of] both ICE's own regulations and the Due Process Clause of the Fifth Amendment."); *Ceesay v. Kurdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [the petitioner], his due process rights were violated, and he is entitled to release."). This Court likewise finds that Petitioner's detention is unlawful, and he must be released.

United States District Court
Eastern District of California

United States District Court
Eastern District of California

IV.   **CONCLUSION AND ORDER**

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED:

1.   Respondents are ORDERED to release Petitioner immediately.

2.   Respondents may not re-detain Petitioner unless and until they obtain a travel document for his removal, and unless and until they follow all procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and any other applicable statutory and regulatory procedures.

**IT IS SO ORDERED.**

Dated: May 19, 2026

_____
ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

7